# In the United States Court of Appeals for the Fifth Circuit

RUBEN GUTIERREZ,

*Plaintiff-Appellee,*

*v.*

LUIS V. SAENZ, ET AL.,

*Defendants-Appellants.*

On Appeal from the U.S. District Court for the
Southern District of Texas, Brownsville Division (No. 1:19-cv-00185)

## BRIEF *AMICUS CURIAE* OF
## THE TEXAS CATHOLIC CONFERENCE OF BISHOPS
## IN SUPPORT OF APPELLEE AND AFFIRMANCE

Hon. Douglas S. Lang,
   *Of Counsel*
G. Michael Gruber
*Counsel of Record*
Dorsey & Whitney LLP
300 Crescent Court
Suite 400
Dallas, TX 75201
(214) 981-9900
lang.doug@dorsey.com
gruber.mike@dorsey.com

Andrew MacRae
Steven Levatino
Levatino | Pace
1101 S. Capital of Texas Hwy
K-125
Austin, TX 78746
(512) 637-1581
andrew@lpfirm.com

*Counsel for* Amicus Curiae

# RULE 28.2.1 CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Defendants-Appellants*

> Luis V. Saenz, Cameron County District Attorney
> Felix Sauceda, Jr., Chief, Brownsville Police Department
> Bryan Collier, Executive Director, Texas Department of Criminal Justice, Huntsville, Texas
> Lorie Davis, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Huntsville, Texas
> Billy Lewis, Warden, Texas Department of Criminal Justice, Huntsville Unit, Huntsville, Texas

*Counsel for Defendants-Appellants*

> Ken Paxton, Attorney General
> Jeffrey C. Mateer, First Assistant Attorney General
> Mark Penley, Deputy Attorney General for Criminal Justice
> Edward L. Marshall, Chief, Criminal Appeals Division
> Jefferson Clendenin, Assistant Attorney General
> Edward Sandoval, First Assistant District Attorney, Cameron County, Texas
> Ricardo Navarro, Special Counsel for the City of Brownsville, Police Chief Felix Sauceda, Officially
> Denton, Navarro, Rocha, Bernal & Zech, P.C.
> Office of the Attorney General of Texas
> Cameron County District Attorney's Office
> Brownsville City Attorney's Office

*Plaintiff-Appellee*

    Ruben Gutierrez

*Counsel for Plaintiff-Appellee*

    Peter Walker
    Shawn Nolan
    Richard W. Rogers III
    Federal Community Defender's Office, Eastern District of Pennsylvania

*Amicus Curiae*

    Texas Catholic Conference of Bishops

*Counsel for Amicus Curiae*

    Steven Levatino            Douglas S. Lang, Of Counsel
    Andrew MacRae          G. Michael Gruber
    Levatino|Pace             Dorsey & Whitney LLP

*/s/ G. Michael Gruber*
G. Michael Gruber
*Counsel of record for* Amicus Curiae
Texas Catholic Conference of Bishops

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iv

IDENTITY AND INTEREST OF AMICUS CURIAE ............................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 2

ARGUMENT ........................................................................................ 3

I.  Under RLUIPA, TDCJ must provide Gutierrez
    access to clergy in the death chamber .............................................. 4

    A. TDCJ's denial is a substantial burden
       under RLUIPA ............................................................................. 4

    B. TDCJ cannot satisfy strict scrutiny ............................................. 6

II. Under the Free Exercise Clause, TDCJ must provide
    Gutierrez access to clergy in the death chamber ............................. 9

    A. TDCJ's policy targets a particular religious
       practice and must satisfy strict scrutiny ..................................... 9

    B. Gutierrez prevails even under the *Turner*/*O'Lone*
       standard ..................................................................................... 12

CONCLUSION ................................................................................... 14

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Brown v. Collier,*
929 F.3d 218 (5th Cir. 2019) .................................................... 12

*Central Rabbinical Congress v. NYC Dep't of Health &*
*Mental Hygiene,*
763 F.3d 183 (2d Cir. 2014) ................................................. 9, 10

*City of Boerne v. Flores,*
521 U.S. 507 (1993) ................................................................... 6

*Cutter v. Wilkinson,*
544 U.S. 709 (2005) ................................................................... 6

*Davis v. Davis,*
826 F.3d 258 (5th Cir. 2016) ...................................................... 7

*Employment Div. v. Smith,*
494 U.S. 872 (1990) ................................................................... 9

*Gonzales v. O Centro,*
546 U.S. 418 (2006) ........................................................... 6, 7, 9

*Holland v. Florida,*
560 U.S. 631 (2010) ................................................................. 14

*Holt v. Hobbs,*
574 U.S. 352 (2015) ............................................................... 5, 6

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
485 U.S. 439 (1988) ................................................................... 5

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
138 S. Ct. 1719 (2018) ............................................................... 9

*Murphy v. Collier,*
139 S. Ct. 1475 (2019) ...................................................... *passim*

*Murphy v. Collier*,
942 F.3d 704 (5th Cir. 2019).............................................. 10

*Murphy v. Collier*,
No. 18A985 (U.S. March 28, 2019)...................................... 8

*O'Lone v. Estate of Shabazz*,
482 U.S. 342 (1987)............................................................ 12

*Shrum v. City of Coweta*,
449 F.3d 1132 (10th Cir. 2006).......................................... 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
137 S. Ct. 2012 (2017)........................................................ 11

*Turner v. Safley*,
482 U.S. 78 (1987).............................................................. 12

*Ward v. Polite*,
667 F.3d 727 (6th Cir. 2012).............................................. 10

*Ware v. Dep't of Corr.*,
866 F.3d 263 (5th Cir. 2017)................................................ 8

*Yellowbear v. Lampert*,
741 F.3d 48 (10th Cir. 2014)................................................ 5

**Statutes**

42 U.S.C. § 2000cc-5 .............................................................. 4

**Other Authorities**

2019 Legislative Agenda, TCCB............................................... 1

Stuart Banner, The Death Penalty: An American History
(2002)................................................................................. 3

Catechism of the Catholic Church § 1501 ............................... 4

Catechism of the Catholic Church § 1502 ............................... 4

Catechism of the Catholic Church § 1524 ............................... 3

Catechism of the Catholic Church § 1525 ............................................. 3, 4

W. Cole Durham and Robert Smith, *Other Forms of
Government Chaplaincy*, 4 Religious Organizations
and the Law (2017) ................................................................................. 3, 4

## IDENTITY AND INTEREST OF THE *AMICUS CURIAE*[1]

The Texas Catholic Conference of Bishops ("the Bishops") is an unincorporated association consisting of the bishops of fifteen Catholic Dioceses in Texas and the Ordinariate of the Chair of St. Peter. Through this association, the various bishops speak with one voice on issues facing the Catholic Church in Texas.

The Bishops regularly advocate for both religious liberty and mercy and justice for prisoners, especially those on death row. *See* 2019 Legislative Agenda*,* TCCB, https://txcatholic.org/wp-content/uploads/2018/10/86th-Legislative-Session-Agenda-FINAL.pdf. Relevantly here, the Bishops have advocated—on moral and legal grounds—for the reversal of the Texas Department of Criminal Justice's ("TDCJ") April 2019 decision to ban all chaplains, even TDCJ-employed clergy, from accompanying the condemned in the execution chamber.

The Bishops submit this brief to ensure that this appeal's expedited pace, joined with contentious debates around the death penalty, do not

---

[1] The parties do not oppose this brief's filing. Undersigned counsel certifies that this brief was not authored in whole or part by counsel for any party, and that no party or party's counsel, nor anyone other than *amicus* and its counsel, has contributed money for this brief.

prevent the Court from adjudicating the important religious-liberty issues "in the way that the claims require and deserve." *Murphy v. Collier*, 139 S. Ct. 1475, 1485 (2019) (Alito, J., dissenting).

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is an important case, but not a hard one. It addresses one of the oldest religious rights known to history and the Christian tradition: the right of the condemned to the comfort of clergy at death. Both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Free Exercise Clause provide robust overlapping protections for this core religious belief.

Further, by its own admission, TDCJ does not have even a good, much less compelling, reason to infringe that core belief here. In the year since Plaintiff-Appellee Ruben Gutierrez requested the presence of a Christian chaplain in the death chamber during his final moments, Texas has failed to supply record evidence showing a real interest served by not accommodating Gutierrez. Nor could it. Gutierrez has requested TDCJ-employed chaplains and, until last year, TDCJ allowed prisoners to have TDCJ-employed clergy with them at the moment of death. Thus, TDCJ

does not and cannot carry its high burden to overcome the constitutional and statutory guarantee of comfort of clergy.

This Court should affirm the stay below. But, at a minimum, it should preserve injunctive relief requiring the presence of a Christian chaplain in the death chamber during Gutierrez's execution. And in any event, it should reject TDCJ's mistaken argument that "equality" of deprivation categorically resolves all Free Exercise or RLUIPA claims regarding a fundamental religious practice.

## ARGUMENT

A condemned man's right to comfort of clergy at his death is a longstanding and fundamental part of the Catholic, and broader Christian, tradition. From Christianity's beginning, priests have been present at the time of death to hear confessions, offer the Eucharist and administer last rites. *See*, *e.g.*, Catechism of the Catholic Church §§ 1524-1525 (concerning *viaticum* administered to those "at th[e] moment" of death).[2] The American colonies continued the practice before, and through, the Founding.[3]

---

[2] Available at http://w2.vatican.va/archive/ccc_css/archive/cate-chism/p2s2c2a5.htm.

[3] Stuart Banner, *The Death Penalty: An American History* 18-19 (2002).

3

This right is especially important for the condemned, for whom the final moments offer a unique chance to prepare for "our heavenly homeland" and for pardon and redemption. *See* Catechism §§ 1525; 1501-1502 (effect of expected death on discernment). Many states have respected this ancient religious practice, allowing a chaplain in the execution chamber—including Texas until last year.[4] Here, both the Free Exercise Clause and RLUIPA guarantee Gutierrez the comfort of clergy at the time of his death.

## I. Under RLUIPA, TDCJ must provide Gutierrez access to clergy in the death chamber.

### A. TDCJ's denial is a substantial burden under RLUIPA.

As quintessential "religious exercise," comfort of clergy at death satisfies RLUIPA's expansive definition. 42 U.S.C. § 2000cc-5(7)(A). The District Court noted Gutierrez sincerely believes that the presence of clergy at death will help him arrive at Heaven. ROA.829; *see Murphy*, 139 S. Ct. at 1484 (Alito, J., dissenting) (death-chamber ban may place burden where prisoner believes a priest's in-chamber actions "will help" prisoner obtain eternal life). It is not the government's place to tell

---

[4] See W. Cole Durham and Robert Smith, *Other Forms of Government Chaplaincy*, 4 Religious Organizations and the Law § 36:7 (2017).

Gutierrez he should be happy with chaplain access hours prior to this crucial moment, but not at the moment of his death. *See* Mot. Vacate 30.

Given his belief, "flatly prohibiting" Gutierrez from access to clergy in the death chamber during his death substantially burdens his religious exercise under RLUIPA. *Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014) (Gorsuch, J.); *see Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (where prisoner shows exercise "grounded in a sincerely held religious belief," enforced prohibition "substantially burdens his religious exercise").

TDCJ responds, citing *Lyng* for the proposition that "[i]ncidental effects of government programs, which may make it more difficult to practice certain religions" do not pose substantial burdens. Mot. Vacate 31 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988)). But *Lyng* is inapposite. First, it concerned "Government's rights to the use of *its own land*" over third-party objections, 485 U.S. at 453 (emphasis supplied), not time-honored religious exercise at the end of a condemned man's life. Second, this is not an "incidental" burden that merely "make[s] it more difficult" for Gutierrez to practice his religion. It is a direct, irrevocable prohibition on his undisputedly sincere religious

exercise. Indeed, the Supreme Court has long recognized that, because prisons exercise "control" that is "severely disabling to private religious exercise," denying permission for a practice produces "government-created burdens on private religious exercise." *Cutter v. Wilkinson*, <u>544 U.S. 709, 720-21</u> (2005).

**B. TDCJ cannot satisfy strict scrutiny.**

RLUIPA imposes an "exceptionally demanding" strict-scrutiny standard, obliging the government to provide that "denying [a burdening] exemption is the least restrictive means of furthering a compelling government interest." *Holt*, <u>574 U.S. at 364-65</u> (citation omitted); *see City of Boerne v. Flores*, <u>521 U.S. 507, 532</u> (1993) (strict scrutiny is the "most demanding test known to constitutional law").

TDCJ has all but admitted it lacks a compelling interest in *this* case. As the district court noted, "Defendants do not suggest that the relief Gutierrez requests . . . will pose any security threat in his *own* execution," only that others "may occur in other executions." <u>ROA.827</u>; *see* Mot. Vacate 32, 34. Put differently, TDCJ's argument is the "classic rejoinder of bureaucrats throughout history"—namely: "If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Gonzales v. O*

*Centro*, 546 U.S. 418, 436 (2006). That argument has long been rejected by courts. *Id.* As this Court has previously explained to this Appellant, "TDCJ's asserted compelling interests must be examined in light of the particular characteristics of each Plaintiff." *Davis v. Davis*, 826 F.3d 258, 271 (5th Cir. 2016). This is because, by law, strict scrutiny "scrutinize[s] the asserted harm of granting specific exemptions to particular religious claimants." *O Centro,* 546 U.S. at 430-31 (2006). TDCJ has not argued that allowing *Gutierrez* comfort of clergy will harm its interests, and so fails strict scrutiny.

TDCJ also fails under the least restrictive means prong, since it cannot show denying *Gutierrez* in-chamber clergy is the least restrictive means of promoting security. Again, TDCJ defends denying Gutierrez his rights not because *his* request jeopardizes prison security, but because *other* prisoners' requests in the future might. Mot. Vacate 33-35. This is the very definition of overinclusive. Moreover, until last year, TDCJ would have granted Gutierrez's request, further demonstrating a feasible, less restrictive alternative.

TDCJ attempts to skip over the strict scrutiny factors by arguing that Justice Kavanaugh's concurrence in *Murphy* establishes that depriving

everyone in-chamber clergy complies with RLUIPA. *E.g.*, Mot. Vacate 34. Not so.

First, Justice Kavanaugh's suggestion (joined by only one other Justice) that TDCJ's policy *may* have passed constitutional muster, relied on the facts and interests outlined in *Murphy*. 139 S. Ct. at 1476 (Kavanaugh, J., concurring). But strict scrutiny turns on compelling interests "as applied to the specific inmate." *Ware v. Dep't of Corr.*, 866 F.3d 263, 269 (5th Cir. 2017). The district court observed no evidence or argument that TDCJ applying its ban to *Gutierrez* would avoid "any security threat in his own execution." ROA.827; *see* TDCJ Opp. Stay at 22, *Murphy v. Collier*, No. 18A985 (U.S. Mar. 28, 2019) (noting that TDCJ-employed chaplains are "truly dedicated to TDCJ's interests").[5]

Moreover, nothing in Justice Kavanaugh's statements suggests a case-specific, legally-mandated accommodation would "violate[] the Constitution's guarantee of religious equality" in the manner of a policy that facially discriminated between religions. 139 S. Ct. at 1476 (Kavanaugh, J., concurring). Nor could they have. The Supreme Court

---

[5] Available at https://www.supremecourt.gov/DocketPDF/18/18A985/94605/20190328160712082_Murphy%20respt%20br%20oppn%20FINAL.pdf

has unanimously rejected "the classic rejoinder of bureaucrats" against case-specific exceptions, and affirmed that RFRA and RLUIPA "mandat[e] consideration, under the compelling interest test, of exceptions to 'rule[s] of general applicability'" as applied to specific facts. *O Centro*, 546 U.S. at 436 (citation omitted).

## II. Under the Free Exercise Clause, TDCJ must provide Gutierrez access to clergy in the death chamber.

### A. TDCJ's policy targets a particular religious practice and must satisfy strict scrutiny.

Under *Employment Division v. Smith*, if a government policy burdening religion is either not "neutral" or not "generally applicable," it is subject to strict scrutiny. 494 U.S. 872, 877-80 (1990). "Factors relevant to the assessment of governmental neutrality include 'the historical background of the decision under challenge, [and] the specific series of events leading to the enactment or official policy in question[.]'" *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (citation omitted).

Accordingly, government policies prompted by a particular religious practice must typically satisfy strict scrutiny. In *Central Rabbinical Congress v. NYC Department of Health & Mental Hygiene*, a New York

9

regulation banned an Orthodox Jewish religious practice, *metzitzah b'peh*. 763 F.3d 183, 195 (2d Cir. 2014). Because the City admitted its regulation was "prompted" by this specific practice, the Second Circuit applied strict scrutiny. 763 F.3d at 186. Likewise, in *Ward v. Polite*, the Sixth Circuit held strict scrutiny applied where "[a]mple evidence support[ed] the theory that no such policy [of denying referrals] existed—until [Plaintiff] asked for a referral on faith-based grounds." 667 F.3d 727, 739 (6th Cir. 2012).

Here, TDCJ acknowledges that its "changed . . . execution protocol" to prohibit chaplains present in the execution room" was in response to: (1) a prisoner's prior request for a Buddhist chaplain in *Murphy v. Collier*; and (2) Justice Kavanaugh's statement in *Murphy* expressing his view on ways to resolve that prisoner's claims. Mot. Vacate 28-29, 39; *see Murphy v. Collier*, 942 F.3d 704, 706 (5th Cir. 2019) (explaining reason for policy change). That is enough to trigger strict scrutiny for a ban on a practice that Gutierrez sincerely believes "would help to ensure his path to the afterlife." ROA.805.

TDCJ's claim that it lacks "invidious hostility toward religion" is beside the point. Mot. Vacate 48; *see Shrum v. City of Coweta*, 449 F.3d

1132, 1144-45 (10th Cir. 2006) (McConnell, J.) (decision "motivated by [officer's] religious commitments" was not "neutral" even if for "secular reasons"; strict scrutiny does not require "animus"). After *Murphy*, TDCJ believed it had two choices: grant religious prisoners of all faiths comfort of clergy or deprive them all that right. TDCJ chose the latter. In doing so, rather than "resolve[] the prior protocol's infirmity," Mot. Vacate 3, TDCJ has exacerbated the constitutional deficiency. Indeed, the First Amendment would mean little if TDCJ could evade Free Exercise claims simply by eliminating *everyone's* religious liberty. And the logic of TDCJ's argument is not limited to the prison context; if accepted, it threatens to dilute Free Exercise rights in a host of circumstances. A promise of hollow equality—a falling tide sinks all boats—does nothing to satisfy the Free Exercise clause's substantive guarantee of religious rights.

Government actions—like TDCJ's—that operate "without regard to religion" and "clear[ly] . . . impose[] a penalty on the free exercise of religion" necessarily trigger "the most exacting scrutiny." *Trinity*

11

*Lutheran Church of Columbia, Inc. v. Comer*, <u>137 S. Ct. 2012, 2020-21</u>

(2017).[6] TDCJ cannot satisfy this standard.

### B. Gutierrez prevails even under the *Turner/O'Lone* standard.

Gutierrez prevails even under the narrower standard of *Turner v. Safley*, <u>482 U.S. 78, 89-90</u> (1987) and *O'Lone v. Estate of Shabazz*, <u>482 U.S. 342, 348-50</u> (1987). This Court considers four factors under *Turner/O'Lone*:

(1) whether the challenged restrictions bear a "valid, rational connection" to a "legitimate governmental interest";

(2) whether alternative means to exercise the asserted right exist;

(3) the requested accommodation's impact on guards, inmates, and prison resources; and

(4) whether there are "ready alternatives" to the restrictions.

*Brown v. Collier*, <u>929 F.3d 218, 232</u> (5th Cir. 2019) (citing *Turner*, <u>482 U.S. at 89-90</u>) (internal quotations omitted).

---

[6] Such targeting is readily distinguishable from a supervision policy aimed at both secular and religious conduct, in the case on which TDCJ relies. *See Brown v. Collier*, <u>929 F.3d 218, 252</u> (5th Cir. 2019) (opinion of Owen, J.) (religious and secular activities both supervised; "evidence reflects that" secular activities not directly supervised contained special categories of prisoners).

*Legitimate governmental interest.* As explained, TDCJ lacks a legitimate interest in denying Gutierrez access in the death chamber to a TDCJ-approved chaplain—previously allowed—based on speculative and hypothetical concerns about other prisoners' claims.

*Alternative means.* Gutierrez seeks comfort of clergy in the last moments of life, to better prepare him for death; there are no alternative means to obtain that comfort.

*Impact on prison resources.* Granting Gutierrez's request will likely have no impact on TDCJ's resources. In fact, the District Court observed, "Defendants do not suggest that the relief Gutierrez requests—the presence of a TDCJ chaplain as has been allowed many times before—will pose any security threat in his own execution." ROA.827-28.

*Ready alternatives.* Not only is there a ready alternative, until recently that alternative was TDCJ's policy. Gutierrez proposes the same accompaniment previously available.

Even under *Turner's* deferential standard, Gutierrez prevails.

**\* \* \* \* \***

For the foregoing reasons, this Court should affirm the district court's stay. However, even if the Court lifts the stay, it should still impose a

13

narrower injunction requiring TDCJ to grant Gutierrez's chaplain request. *See Holland v. Florida*, 560 U.S. 631, 650 (2010) (noting courts' broad power to grant equitable relief is not limited to that granted by the district court). While the Bishops oppose the death penalty under any circumstances, such an injunction would at least protect Gutierrez's religious liberty in this most crucial moment.

## CONCLUSION

The Court should affirm the district court's stay or, at minimum, require TDCJ to provide Gutierrez with access to Christian clergy in the chamber.

Date: June 12, 2020                    Respectfully submitted,

*/s/ G. Michael Gruber*

Andrew MacRae
Steven Levatino
Levatino | Pace
1101 S. Capital of Texas Hwy
K-125
Austin, TX 78746
(512) 637-1581
andrew@lpfirm.com

Hon. Douglas S. Lang,

*Of Counsel*
G. Michael Gruber
*Counsel of Record*
Dorsey & Whitney LLP
300 Crescent Court
Suite 400
Dallas, TX 75201
(214) 981-9900
lang.doug@dorsey.com
gruber.mike@dorsey.com

*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I certify that on June 12, 2020, the foregoing brief was (1) served via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov, upon all registered CM/ECF users; and (2) transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13 and the document has been scanned with the most recent version of Windows Defender Antivirus and is free of viruses.

*/s/ G. Michael Gruber*
G. Michael Gruber
*Counsel of record for* Amicus Curiae
Texas Catholic Conference of Bishops

Date: June 12, 2020

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of <u>Fed. R. App. P. 29(a)</u> and <u>Fed. R. App. P. 27(d)(2)</u> because, excluding the parts exempted by <u>Fed. R. App. P. 32(f)</u>, it contains 2,491 words. This brief complies with the requirements of <u>Fed. R. App. P. 32(a)(5)</u> and <u>Fed. R. App. P. 32(a)(6)</u> because it has been prepared in a 14-point, proportionally spaced typeface (Century Schoolbook) using Microsoft Word 2016.

<u>*/s/ G. Michael Gruber*</u>
G. Michael Gruber
*Counsel of record for* Amicus Curiae
Texas Catholic Conference of Bishops

Date: June 12, 2020